[Cite as *State v. Agosta*, 2012-Ohio-3225.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT


|  |  |  |
|---|---|---|
| | : | JUDGES: |
| STATE OF OHIO | : | W. Scott Gwin, P.J. |
| | : | Sheila G. Farmer, J. |
| Plaintiff-Appellee | : | Julie A. Edwards, J. |
| | : | |
| -vs- | : | Case No. 11-CA-53 |
| | : | |
| | : | |
| BRIAN P. AGOSTA | : | O P I N I O N |
| Defendant-Appellant | | |


CHARACTER OF PROCEEDING:        Criminal Appeal from Fairfield County
                                Court of Common Pleas Case No.
                                CRB 10 01749

JUDGMENT:                       Affirmed

DATE OF JUDGMENT ENTRY:         June 28, 2012

APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

STEPHANIE L. HALL                     SCOTT P. WOOD
Assistant City Prosecutor             Dagger, Johnston, Miller, Ogilvie &
City of Lancaster Law                 Hampson
Director's Office                     144 East Main Street
123 East Chestnut Street              P.O. Box 667
P.O. Box 1008                         Lancaster, Ohio  43130
Lancaster, Ohio  43130

*Edwards, J.*

{¶1} Defendant-appellant, Brian Agosta, appeals his conviction and sentence from the Fairfield Municipal Court on one count of abusing harmful intoxicants. Plaintiff-appellee is the State of Ohio.

<u>STATEMENT OF THE FACTS AND CASE</u>

{¶2} On July 28, 2010, a complaint was filed alleging that appellant had abused harmful intoxicants in violation of R.C. 2925.31, a first degree misdemeanor. Appellant, on August 2, 2010, filed a written plea of not guilty.

{¶3} A bench trial was held on January 18, 2011. The following testimony was adduced at trial.

{¶4} During the evening of July 28, 2010, Louis Milazzo called the police to his residence after he noticed a vehicle parked in front of his house for approximately an hour. The vehicle was running and the lights were on. The vehicle was not pulled to the side of the street, but rather was sitting in the street running at a stop sign. Milazzo testified that he could see that someone was sitting at the wheel in the driver's side.

{¶5} On cross-examination, Milazzo testified that the person inside the vehicle moved backward and forward on occasion and, as cars approached from behind, did not wave the cars on.

{¶6} Officer Eric Spiegel of the Lancaster Police Department testified that he was on duty in uniform in a marked cruiser on July 28, 2010, at approximately 1:09 a.m. when he came into contact with appellant who was in the driver's seat of his vehicle. Officer Spiegel had been dispatched to the location in response to Milazzo's call about a vehicle sitting at an intersection for a long period of time. According to the officer,

appellant was unconscious in the vehicle with the brake lights on and the radio playing. Officer Spiegel was able to rouse appellant, who was slumped in the driver's seat, by shaking him on the shoulder and yelling very loudly for him. According to the officer, it took a long time to get appellant's attention and appellant, once roused, was "sluggish and slow to respond." Transcript at 31. It took appellant awhile to get out of his vehicle. Officer Spiegel testified that there was a whitish metal canister between appellant's arm and his lap. The canister was approximately seven or eight inches high with a plastic nozzle on top. When Officer Spiegel asked appellant what it was, appellant indicated that it was compressed air and that he was using it to get high. Officer Spiegel testified that the canister was cold to the touch, which indicated that the contents had been expelled.

{¶7}    In total, Officer Spiegel located and collected three (3) canisters from appellant's vehicle. The canisters were admitted into evidence. While one was in his lap, the other two were on the floorboard in the back seat. The two in the back were empty while the one located on appellant's person was half full. Officer Spiegel testified that the three appeared to be a product that is used to clear keyboards and small electronic devices of dust and debris. Over objection, he testified that he had read the canisters and that the canisters contained warnings against inhaling the contents. The following is an excerpt from his testimony at trial:

{¶8}    "Q. Officer Spiegel, um, you indicated that you read the cans?

{¶9}    "A. Yes, ma'am.

{¶10}   "Q. Um, do they have warnings on them?

{¶11}   "A. Yes, ma'am.

**{¶12}** "Q. Okay. And what do those warnings include?

**{¶13}** "ATTY. WOOD: Objection, hearsay.

**{¶14}** "THE COURT: Well, I'm going to let you take a look at the can and answer the question. I know we're hitting some objectionable ground and, um, I mean, I can kind of see the writing on the wall that this case is likely to go up on appeal, so I'm going to let you at least read the contents of the can.

**{¶15}** "PROS. SMITH: Thank you, your Honor.

**{¶16}** "Q. Officer Spiegel, did you read the canister, I think you have canister B in your hand, is that correct?

**{¶17}** "A. Yes, ma'am.

**{¶18}** "Q. Um, did you read that when you took it into possession on July 28, 2010?

**{¶19}** "A. Yes, ma'am.

**{¶20}** "Q. Okay. And what does the canister say, Officer Spiegel?

**{¶21}** "ATTY. WOOD: Objection, hearsay.

**{¶22}** "THE COURT: Um, the objection is duly noted.

**{¶23}** "THE COURT: Please continue.

**{¶24}** "A. Uh, the first five lines on the back of the canister are in red lettering and start with the word, 'Danger, intentional misuse by deliberately concentrating the contents of this can and inhaling may be harmful or fatal. Inhalant abuse can be fatal. This product contains a bitterant to discourage inhalant abuse.'" Transcript at 43-44.

**{¶25}** He further testified that to his knowledge, it was not acceptable to ingest the contents.

**{¶26}** On cross-examination, Officer Spiegel testified that he had no personal knowledge as to the contents of the canisters found in appellant's vehicle and that his own knowledge came from what he had read on the canisters. He further testified that he had no personal experience as to the effects of inhaling the contents. He testified that the canisters indicated that they contained difluoroethane and did not mention compressed air or aerosol.

**{¶27}** At the conclusion of the evidence, the trial court found appellant guilty of abusing harmful intoxicants. The trial court sentenced appellant to 170 days in jail, with 140 days suspended, and ordered that appellant's driver's license be suspended for a period of three years. The trial court also ordered appellant to serve a total of three years of probation and fined appellant $250.00.

**{¶28}** Appellant now raises the following assignments of error on appeal:

**{¶29}** "I. THE TRIAL COURT ERRED IN ADMITTING HEARSAY STATEMENTS AT TRIAL.

**{¶30}** "II. THERE WAS INSUFFICIENT EVIDENCE TO CONVICT APPELLANT OF ABUSING HARMFUL INTOXICANTS."

I

**{¶31}** Appellant, in his first assignment of error, argues that the trial court erred in admitting hearsay statements at trial. Appellant specifically contends that the trial court erred in allowing Officer Spiegel, over objection, to testify as to the written warnings on the canisters found in appellant's motor vehicle. According to appellant, "these statements were being offered by the State to prove the truth of those statements, namely, that the contents were potentially harmful if inhaled."

**{¶32}** The admission or exclusion of evidence rests in the sound discretion of the trial court. *State v. Sage*, 31 Ohio St.3d 173, 180, 510 N.E.2d 343 (1987). As a general rule, all relevant evidence is admissible. Evid.R. 402. Our task is to look at the totality of the circumstances in the particular case and determine whether the trial court acted unreasonably, arbitrarily, or unconscionably in allowing the disputed evidence. See *State v. Oman*, 5th Dist. 1999CA00027, 2000 WL 222190 (Feb. 14, 2000).

**{¶33}** "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Evid.R. 801(C). Hearsay is generally not admissible unless it falls within one of the recognized exceptions. Evid.R. 802; *State v. Steffen*, 31 Ohio St.3d 111, 119, 509 N.E.2d 383 (1987).

**{¶34}** In *State v. Taylor*, 5th Dist. No. 05COA062, 05COA063, 2006-Ohio-6559, the appellant was convicted of operating a motor vehicle while under the influence, speeding and possession of a controlled substance. On appeal, he argued that the trial court had erred in allowing an Ohio State Highway Patrol Criminalist to testify about a warning label on a prescription bottle containing Vicodin. The bottle had been found in the appellant's vehicle during the inventory search. The appellant argued that the warning label constituted hearsay.

**{¶35}** In holding that the references to the warning label did not constitute hearsay and were relevant, this Court stated, in relevant part, as follows:

**{¶36}** "The prescription bottle was marked as evidence and received as Exhibit 8. T. at 191. During oral argument, appellant's counsel attempted to move for an App.R. 9(E) correction of the record. Counsel argued an objection was made to the prescription

bottle's admission, but it was omitted from the record. Although defense counsel objected at each mention of the warning label, there is no specific assignment of error on the prescription bottle's admission into evidence; therefore, we find the App.R. 9(E) request to be irrelevant.

{¶37} "The prescription bottle was seized during appellant's arrest and qualified as relevant and admissible evidence under Evid.R. 401. Appellant admitted to taking the Vicodin and it was in his possession during his arrest. T. at 76. We therefore conclude the references to the warning label did not constitute hearsay and were relevant." Id. at ¶ 12-13.

{¶38} In the case sub judice, the 3 canisters containing the warnings were marked as exhibits and admitted into evidence. At trial, counsel for appellant objected to the admission of the canisters to the extent that they contained hearsay statements. We note, however, that appellant has not assigned as error the admission of the canisters. The canisters were seized during appellant's arrest and qualified as admissible evidence under Evid.R. 401. See *Taylor, supra.* At trial, testimony was adduced that appellant told Officer Spiegel that the canisters contained compressed air and that he was using the same to get high. We, therefore, find that any references to the warnings on the canister labels did not constitute hearsay and were relevant. See *Taylor*, supra.

{¶39} Appellant's first assignment of error is, therefore overruled.

II

{¶40} Appellant, in his second assignment of error, argues that his conviction for abusing harmful intoxicants was against the sufficiency of the evidence. Appellant

specifically maintains that the State needed an expert witness to testify as to whether or not difluoroethane was a "harmful intoxicant" as defined by R.C. 2925.01(I).

**{¶41}** On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* ¶2 of the syllabus.

**{¶42}** Appellant was convicted of abusing harmful intoxicants in violation of R.C 2925.31. Such section states, in relevant part, as follows: "(A) Except for lawful research, clinical, medical, dental, or veterinary purposes, no person, with purpose to induce intoxication or similar physiological effects, shall obtain, possess, or use a harmful intoxicant."

**{¶43}** A harmful intoxicant is defined in R.C. 2925.01(I). This section states that " '[h]armful intoxicant' does not include beer or intoxicating liquor but means any of the following:

**{¶44}** "(1) Any compound, mixture, preparation, or substance the gas, fumes, or vapor of which when inhaled can induce intoxication, excitement, giddiness, irrational behavior, depression, stupefaction, paralysis, unconsciousness, asphyxiation, or other harmful physiological effects, and includes, but is not limited to, any of the following:

**{¶45}** "(a) Any volatile organic solvent, plastic cement, model cement, fingernail polish remover, lacquer thinner, cleaning fluid, gasoline, or other preparation containing a volatile organic solvent;

**{¶46}** "(b) Any aerosol propellant;

**{¶47}** "(c) Any fluorocarbon refrigerant;

**{¶48}** "(d) Any anesthetic gas.

**{¶49}** "(2) Gamma Butyrolactone;

**{¶50}** "(3) 1,4 Butanediol." (Emphasis added).

**{¶51}** Appellant specifically maintains that difluoroethane is not specifically identified as a "harmful intoxicant" and that appellee failed to produce any evidence as to what difluoroethane is, whether it is a harmful intoxicant and how difluoroethane affects the human body.

**{¶52}** However, as noted by the court in *State v. Hoskins*, 9th Dist. No. 24204, 2008-Ohio-5706, "the essential question posed in R.C. 2925.01(I) is whether [a substance] is a substance the gas, fumes, or vapor of which when inhaled can induce intoxication, etc." Id. at ¶8. In the case sub judice, Officer Spiegel testified that the canister was a metallic canister seven or eight inches high that had a white plastic nozzle on top and that he had seen similar canisters used in cases involving using harmful intoxicants or propellants. Appellant told the officer that he used the canisters to get high and that the canister contained compressed air. Appellant's own attorney stated to the trial court that he believed that appellee had established that the canisters were aerosol propellants. In addition, testimony was adduced that, at the time the officer approached appellant's vehicle, appellant appeared to be unconscious and was slumped over. When appellant was roused, he showed signs of impairment including sluggishness and slowness to respond.

**{¶53}** Based on the foregoing, we find that any reasonable trier of fact could have found that appellant committed the offense of abusing harmful intoxicants. There was sufficient testimony that the canisters were aerosol propellants and that appellant used to same to get high.

**{¶54}** Appellant's second assignment of error is, therefore, overruled.

**{¶55}** Accordingly, the judgment of the Fairfield Municipal Court is affirmed.

By: Edwards, J.

Gwin, P.J. and

Farmer, J. concur

_____

_____

_____

JUDGES

JAE/d0423

[Cite as *State v. Agosta*, 2012-Ohio-3225.]

IN THE COURT OF APPEALS FOR FAIRFIELD COUNTY, OHIO

FIFTH APPELLATE DISTRICT

STATE OF OHIO                          :
                                       :
            Plaintiff-Appellee         :
                                       :
                                       :
-vs-                                   :      JUDGMENT ENTRY
                                       :
BRIAN P. AGOSTA                        :
                                       :
            Defendant-Appellant        :      CASE NO. 11-CA-53


    For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Fairfield County Court of Common Pleas is affirmed.  Costs assessed to appellant.


                                                             _____

                                                             _____

                                                             _____

                                                       JUDGES

IN THE COURT OF APPEALS FOR FAIRFIELD COUNTY, OHIO

FIFTH APPELLATE DISTRICT

STATE OF OHIO                          :
                                       :
        Plaintiff-Appellee             :
                                       :
                                       :        JUDGMENT ENTRY
                                       :        NUNC PRO TUNC
- vs -                                 :
                                       :        CASE NO. 11-CA-08 and
                                       :                 11-CA-53
                                       :
BRIAN P. AGOSTA                        :
                                       :
        Defendant-Appellant            :
                                       :


        Due to a typographical error, the Opinion was filed in 11-CA-08, appellant's

closed case, rather than in 11-CA-53, appellant's active case.  The Opinion filed in Case

Number 11-CA-08 on June 28, 2012, is hereby ordered vacated.  The Clerk of Courts is

directed to file the Opinion in Case Number 11-CA-53 as of June 28, 2012.

        IT IS SO ORDERED.


                                       _____


                                       _____


                                       _____
                                                     JUDGES

JAE/dr/rmn